# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **NORTON MUSEUM OF ART, INC.,** <br> 1450 S Dixie Highway <br> West Palm Beach, Florida 33401 | : <br> : <br> : <br> : | |
| *Plaintiff,* | : <br> : | CASE NO. |
| v. | : <br> : | |
| **VERITY PARTNERS, INC.,** <br> c/o Hess & Heathcock, P.A. <br> 40 SE Osceola St <br> Stuart, FL 34994 | : <br> : <br> : <br> : <br> : | **JURY DEMAND ENDORSED HEREIN** |
| *Defendant.* | | |

## COMPLAINT WITH JURY DEMAND

Plaintiff Norton Museum of Art, Inc., for its Complaint against Defendant Verity Partners, Inc., avers and alleges as follows:

### PARTIES

1. Plaintiff Norton Museum of Art, Inc. (the "Museum") is a non-profit organization with its principal place of business in Palm Beach County, Florida.

2. Defendant Verity Partners, Inc. ("Verity"), is a Florida corporation with its principal place of business in Palm Beach County, Florida.

### JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

4. Verity is subject to personal jurisdiction in the State of Florida pursuant to Federal Rule of Civil Procedure 4(k) and the Fourteenth Amendment of the United States Constitution. In particular, this Court has general personal jurisdiction over Verity as it is incorporated in Florida and maintains its principal place of business in Florida. This Court has specific personal

jurisdiction over Verity as it purposely served the Florida market for telecommunication services.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Verity's principal place of business is in this district, and it transacts substantial business in this district. Further, a substantial part of the events and/or omissions giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

6. The Museum is a non-profit art museum in Palm Beach County, Florida showcasing over 8,200 works of art in five curatorial departments, as well as displaying temporary exhibits and offering regular public events.

7. In August 2015, the Museum entered into an agreement with Verity whereby Verity agreed to provide telecommunications and network management services to the Museum ("the Master Service Agreement").

8. The Master Service Agreement required Verity to provide a variety of services, including but not limited to network management, cloud backup, email filtering, and connectivity services to manage the Museum's Unity telephone system.

9. The Museum performed all conditions required under the Master Service Agreement.

10. As early as February 2025, the Museum sent written requests to Verity for the PIN and/or password associated with the Museum's telephony account.

11. On October 1, 2025, the Museum provided a written notice of termination of the Unity telephone service, in accordance with the Master Service Agreement.

12. Upon sending its written notice of termination, the Museum sent additional written requests to Verity for the PIN and/or password associated with the Museum's telephony account so that it could initiate the porting process with another service provider. A copy of those written

requests are attached hereto as Exhibit A.

13. Pursuant to 47 U.S.C. § 222(c)(2), "[a] telecommunications carrier shall disclose customer proprietary network information, upon affirmative written request by the customer, to any person designated by the customer."

14. Despite the Museum's clear requests over the last six months, Verity has refused to disclose the PIN and/or password for the Museum's telephony account.

15. Disclosure of this PIN is necessary to complete the transition from Verity's service to the Museum's new telephone carrier's services.

16. Further, without the PIN, the Museum is unable to transition the telephone number it has used for over eighty years of operation and for which its patrons rely on to get in touch with the Museum's staff to the new carrier.

17. Verity also refused to confirm that it will continue providing telephone services to the Museum until a transition to a new service provider can be complete, jeopardizing the Museum's business reputation and revenue.

18. The Museum has been and will continue to be damaged by Verity's failure to cooperate, including but not limited to the Museum being forced to pay for duplicative services from two telecommunication carriers, disruption of business operations, and exposure to additional costs and reputational harm.

## COUNT I – VIOLATION OF 47 U.S.C. § 222

19. The Museum restates the forgoing paragraphs as if fully rewritten herein.

20. Pursuant to 47 U.S.C. § 222(c)(2), "[a] telecommunications carrier shall disclose customer proprietary network information, upon affirmative written request by the customer, to any person designated by the customer."

21. The Museum sent Verity multiple written requests to access its PIN for the Museum's telephony account.

22. To date, Verity has failed to provide the Museum the requested PIN.

23. The Museum has been monetarily damaged by Verity's failure and had to expend substantial attorneys' fees due to Verity's refusal to provide the PIN.

## COUNT II – PRELIMINARY INJUNCTION

24. The Museum restates the forgoing paragraphs as if fully rewritten herein.

25. Verity should be enjoined from taking any action to interfere with the Museum's transition of its telephony services, including terminating services before a transition of telephony services can be complete.

26. Further, Verity should be enjoined to provide the requested PIN to the Museum's telephony account.

27. It is beyond dispute that Verity has failed to provide the PIN to the Museum, in violation of federal law. Instead, Verity has threatened to cut off its service to the Museum during the transition to another carrier, thereby leaving the Museum vulnerable to business loss and security risks. Therefore, the Museum has a strong likelihood of success on the merits of its claims.

28. As a direct and proximate result of Verity's actions, the Museum will sustain irreparable harm unless Verity's conduct is enjoined.

29. Injunctive relief would not harm third parties, and the public interest would be served by the issuance of an injunction preventing Verity from continuing to violate the law.

30. The Museum is therefore entitled to a preliminary injunction enjoining Verity from taking any action to interfere with the Museum's transition of its telephony services, including terminating services before a transition of telephony services can be complete.

## **PRAYER FOR RELIEF**

WHEREFORE, the Museum prays for relief and judgment as follows:

A.  As to Count I, compensatory damages, attorney's fees, and costs for Verity's failure to comply with 47 U.S.C. § 222(c)(2);

B.  As to Count II, a preliminary injunction enjoining Verity from taking any action to interfere with The Museum's transition of its telephony services, including terminating services before a transition of telephony services can be complete, and enjoining Verity to provide The Museum the requested PIN;

C.  Pre- and post-judgment interest;

D.  Attorney's fees, costs, and any other appropriate relief under 47 U.S.C. § 206; and

E.  Any other declarative, injunctive, or other equitable relief this Court deems just and appropriate.

Dated: October 21, 2025

*s/ Liana R. Hollingsworth*
Liana R. Hollingsworth (FL-76930)
Danielle S. Rice (OH-0093757) *(pro hac application forthcoming)*
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Telephone: (614) 464-5628
Facsimile: (614) 719-5129
Email: lrhollingsworth@vorys.com
        dsrice@vorys.com

*Attorneys for Plaintiff Norton Museum of Art, Inc.*

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

*s/ Liana R. Hollingsworth*
Liana R. Hollingsworth (FL-76930)
