# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORTON MUSEUM OF ART, INC.,** *Plaintiff,* | : : : |
| v. | : : : |
| | : CASE NO. 9:25-cv-81303 : |
| **VERITY PARTNERS, INC.,** *Defendant.* | : District Judge Donald M. Middlebrooks : Magistrate Judge William Matthewman : : : |

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

Plaintiff Norton Museum of Art, Inc., for its First Amended Complaint against Defendant Verity Partners, Inc., avers and alleges as follows:

## PARTIES

1. Plaintiff Norton Museum of Art, Inc. (the "Museum") is a non-profit organization with its principal place of business in Palm Beach County, Florida.

2. Defendant Verity Partners, Inc. ("Verity"), is a Florida corporation with its principal place of business in Palm Beach County, Florida.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over the Museum's claims for a violation of 47 U.S.C. § 222 and a violation of 47 U.S.C. § 201(b) pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the Museum's breach of contract and unjust enrichment claims pursuant to 28 U.S.C. § 1367.

5. Verity is subject to personal jurisdiction in the State of Florida pursuant to Federal Rule of Civil Procedure 4(k) and the Fourteenth Amendment of the United States Constitution. In

particular, this Court has general personal jurisdiction over Verity as it is incorporated in Florida and maintains its principal place of business in Florida. This Court has specific personal jurisdiction over Verity as it purposely served the Florida market for telecommunication services.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Verity's principal place of business is in this district, and it transacts substantial business in this district. Further, a substantial part of the events and/or omissions giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

7. The Museum is a non-profit art museum in Palm Beach County, Florida showcasing over 8,200 works of art in five curatorial departments, as well as displaying temporary exhibits and offering regular public events.

8. In August 2015, the Museum entered into an agreement with Verity whereby Verity agreed to provide telecommunications and network management services to the Museum ("the Master Service Agreement").

9. The Master Services Agreement included several addenda statements of work ("Service Orders") detailing the services Verity was to provide to the Museum.

10. The Master Service Agreement and Service Orders required Verity to provide a variety of services, including but not limited to network management, cloud backup, email filtering, and connectivity services to manage the Museum's Unity telephone system.

11. The Museum performed all conditions required under the Master Service Agreement.

12. Per the Master Service Agreement, Verity was required to "the best of its ability[] render the services set forth in [the Master Service Agreement] in a timely and professional manner[.]"

13. The Service Orders stated that Verity would respond to non-business interrupting service issues during business hours (eight hours per day, five days per week) and would be available to respond to business interrupting emergency triage on a 24 hours per day, seven days per week basis.

14. Instead, Verity refused to address service requests when service was disrupted.

15. The Museum's phone system frequently malfunctioned.

16. Verity failed to provide timely service of the malfunctioning phone system as required by the Service Orders, causing business disruption to the Museum.

17. At times, Verity entirely refused to speak to the Museum to address service requests for malfunctioning phone lines, causing business disruption to the Museum.

18. Due to telephone service disruptions, the Museum decided to change telephone service providers.

19. Porting the Museum's phone numbers to the new service provider was necessary to maintain the phone numbers it had used for over eighty years of operation and for which its patrons rely on to get in touch with the Museum's staff.

20. Porting the Museum's phone numbers required entering a PIN and/or password that the Museum did not possess.

21. As early as February 2025, the Museum sent written requests to Verity for the PIN and/or password associated with the Museum's telephony account.

22. Verity did not provide the Museum with the PIN and/or password.

23. Subsequently, the Museum's porting request was rejected due to a lack of PIN and/or password.

24. On October 1, 2025, the Museum provided a written notice of termination of the

Unity telephone service, in accordance with the Master Service Agreement.

25. Upon sending its written notice of termination, the Museum sent additional written requests to Verity for the PIN and/or password associated with the Museum's telephony account so that it could initiate the porting process with the new service provider. A copy of those written requests are attached hereto as Exhibit A.

26. On October 21, 2025, after Verity refused to comply with the Museum's clear requests for the PIN over the previous eight months, the Museum filed a complaint against Verity for damages and attorneys' fees associated with Verity's delay in providing the PIN, as well as a preliminary injunction to require Verity to provide the PIN ("Action").

27. Verity refused to disclose the PIN and/or password for the Museum's telephony account until November 25, 2025, after the commencement of this Action.

28. Disclosure of this PIN to port the Museum's phone numbers was a prerequisite to complete the transition from Verity's service to the Museum's new telephone carrier's services, and thus absolutely necessary.

29. Because of Verity's delay in providing the PIN, the Museum initiated the process for obtaining new phone numbers and dedicated resources to starting the process of potentially switching phone numbers.

30. Further, due to the delay in porting over the phone numbers, the Museum paid for duplicative phone services from Verity and the Museum's new telephone carrier.

31. The Museum has been damaged by Verity's failure to cooperate, including but not limited to the Museum being forced to pay for duplicative services from two telecommunication carriers, disruption of business operations, and exposure to additional costs and reputational harm.

## COUNT I – VIOLATION OF 47 U.S.C. § 222

32. The Museum restates the forgoing paragraphs as if fully rewritten herein.

33. Pursuant to 47 U.S.C. § 222(c)(2), "[a] telecommunications carrier shall disclose customer proprietary network information, upon affirmative written request by the customer, to any person designated by the customer."

34. The Museum sent Verity multiple written requests—over a months-long period—to access its PIN for the Museum's telephony account.

35. Verity failed to provide the Museum the requested PIN until November 25, 2025.

36. Because of Verity's delay, the Museum was monetarily damaged and had to expend substantial attorneys' fees to attempt to obtain the PIN and/or password from Verity and complete the porting process.

37. Pursuant to 47 U.S.C. § 206 and 47 U.S.C. § 207, Verity is liable to Norton for damages sustained and attorneys' fees due to Verity's delay in the porting process.

## COUNT II – VIOLATION OF 47 U.S.C. § 201(b)

38. The Museum restates the forgoing paragraphs as if fully rewritten herein.

39. 47 C.F.R. § 52.35 requires telecommunication carriers to port "simple" requests within one business day and requires carriers to port "non-simple" requests within four business days.

40. Verity did not port the Museum's phone numbers to its new carrier within one business day of the Museum's request.

41. Nor did Verity port the Museum's phone numbers within four business days of the Museum's request.

42. Instead, Verity withheld the PIN and/or password required for the porting process

for over eight months.

43. The Federal Communications Commission ("FCC") has noted "that a violation of [its] number portability rules would constitute an unjust and unreasonable practice under section 201(b) of the [Communications] Act [of 1934]." *Telephone Number Portability; CTIA Petitions for Declaratory Ruling on Wireline-Wireless Porting Issues*, 18 F.C.C.R. 23697, 23709 n.76, 2003 FCC LEXIS 6249 (2003).

44. Therefore, a violation of the FCC's number portability regulations, including 47 C.F.R. § 52.35, is an unjust and unreasonable practice under 47 U.S.C. § 201(b).

45. 47 U.S.C. § 201(b) states that any "charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

46. Verity violated the FCC's number portability rules by refusing for over eight months to provide the requested PIN and/or password necessary to complete the porting process.

47. Verity's conduct is unjust and unreasonable and thus unlawful under 47 U.S.C. § 201(b).

48. Because of Verity's delay, the Museum was monetarily damaged and had to expend substantial attorneys' fees to attempt to obtain the PIN and/or password from Verity and complete the porting process.

49. Pursuant to 47 U.S.C. § 206 and 47 U.S.C. § 207, Verity is liable to Norton for damages sustained and attorneys' fees due to Verity's delay in the porting process.

## COUNT III – BREACH OF CONTRACT

50. The Museum restates the forgoing paragraphs as if fully rewritten herein.

51. In 2015, the Museum and Verity entered into a binding and valid contract, memorialized in the Master Service Agreement and related Service Orders, for Verity's services.

52. The Museum performed all obligations under the Master Service Agreement and Service Orders.

53. Verity breached its obligations under the Master Service Agreement and Service Orders by: (1) failing to provide the PIN for the Museum's telephony account upon written request and only providing it upon commencement of this Action, (2) failing to timely service and maintain the Museum's telephone system, and (3) failing to respond to service requests when the Museum's phone system was malfunctioning.

54. As a result of Verity's breach, the Museum has suffered damages, attorneys' fees and costs, the exact amount to be determined at trial.

## COUNT IV – UNJUST ENRICHMENT
### (In the Alternative)

55. The Museum restates the forgoing paragraphs as if fully rewritten herein.

56. The Museum conferred a benefit on Verity by paying for telephony and network management services.

57. Verity was and remains aware of the benefit conferred on it by the Museum.

58. Verity accepted and retained the benefit of the Museum's payments, while failing to provide the contracted services, under circumstances in which it was unjust to do so.

59. As a result, Verity has been unjustly enriched, at the Museum's expense.

## PRAYER FOR RELIEF

WHEREFORE, the Museum prays for relief and judgment as follows:

A. As to Count I, judgment in favor of the Museum and against Verity, in an amount to be determined at trial including, but not limited to, compensatory damages for past and future injury, attorneys' fees, and costs for Verity's failure to comply with 47 U.S.C. § 222(c)(2);

B.  As to Count II, judgment in favor of the Museum and against Verity, in an amount to be determined at trial including, but not limited to, compensatory damages for past and future injury, attorneys' fees, and costs for Verity's failure to comply with 47 U.S.C. § 201(b);

C.  As to Count III, judgment in favor of the Museum and against Verity, in an amount to be determined at trial including, but not limited to, compensatory damages for past and future injury, and pre-judgment and post-judgment interest, as permitted by law;

D.  As to Count IV, judgment in favor of the Museum and against Verity, in an amount to be determined at trial including, but not limited to, compensatory damages for past and future injury, and pre-judgment and post-judgment interest, as permitted by law;

E.  Pre- and post-judgment interest;

F.  Attorneys' fees, costs, and any other appropriate relief under 47 U.S.C. § 206 and 47 U.S.C. § 207; and

G.  Any other declarative, injunctive, or other equitable relief this Court deems just and appropriate.

Dated: December 29, 2025

/s/ Liana R. Hollingsworth
Liana R. Hollingsworth (FL-76930)
Danielle S. Rice (OH-0093757) *(pro hac vice)*
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Telephone: (614) 464-5628
Facsimile: (614) 719-5129
Email: lrhollingsworth@vorys.com
           dsrice@vorys.com

*Attorneys for Plaintiff Norton Museum of Art, Inc.*

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

*/s/ Liana R. Hollingsworth*
Liana R. Hollingsworth (FL-76930)

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2025 a copy of the foregoing First Amended Complaint was filed electronically and served on counsel of record via the Court's electronic filing system.

>*/s/ Liana R. Hollingsworth*
>Liana R. Hollingsworth (FL-76930)